UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT SINCLAIR LEE,

      Plaintiff,

v.                                   Case No. 3:24cv321-TKW-HTC

FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

      Defendants.

_____/

## ORDER

Plaintiff Robert Sinclair Lee, a prisoner proceeding *pro se*, has filed a civil rights complaint under 42 U.S.C. § 1983 alleging correctional officers used excessive force against him while he was confined at Santa Rosa Correctional Institution ("SRCI"). Doc. 1. After reviewing the complaint, the Court finds it fails to state a claim against several of the Defendants. The Court, however, will allow Plaintiff an opportunity to clarify his allegations in an amended complaint. Alternatively, Plaintiff should file a notice of voluntary dismissal if he does not wish to proceed with this action.

## I.    Background

Plaintiff's complaint names eleven Defendants: (1) the Florida Department of Corrections ("FDOC"); (2) Secretary Ricky Dixon; (3) Warden R. Quinn; (4)

Captain J. White; (5) Lieutenant Grimm; (6) Sergeant Perkins; (7) Officer K. Young; (8) Officer G.L. Hartley; (9) Officer Trimble; (10) Officer Gerenscer; and (11) Officer Coates. The complaint sets forth the following factual allegations, which are accepted as true for purposes of this Order.

On May 17, 2024, Plaintiff was informed he was going to be moved from the Annex at SRCI to the Main Unit. Plaintiff expressed fear about being housed in the Main Unit, believing he would be deprived of his "safety and well-being because of a prior incident where he filed a lawsuit #3:20-cv-5462-MCR-HTC."

After Plaintiff expressed reservations about being moved, Defendants White, Hartley, and Grimm warned him that chemical agents would be administered if he did not comply. These officers then escorted Plaintiff to the Main Unit while he was in full restraints, including "handcuffs, black box, waist-chain, and shackles." While being moved, Plaintiff continued to talk about his concern for his safety and well-being, and how he was being deprived of his rights.

When Plaintiff and the officers entered the Main Unit, Defendants Young and Coates joined the escort. Plaintiff once again expressed his fear about the move but was told by White, Grimm, and Young to "stop being disruptive and cease his disorderly behavior."

After entering E-Dorm, Plaintiff noticed Defendants Trimble, Perkins, and Gerenscer "waiting on him at cell E2102." Plaintiff told Hartley, Perkins, Young,

and Gerenscer that he refused to go into the cell.  Hartley, Young, Trimble, and Gerenscer then "slammed Plaintiff's head into the wall."  White had the camera operator turn the camera off and Hartley, Young, Trimble, and Gerenscer "rush[ed] Plaintiff headfirst about 5 steps and slam[ed] him face first on the floor."  Young then put his knee on Plaintiff's neck "with all his weight on it."  Hartley hit Plaintiff with his walkie-talkie "twice on the side of his face and head."  Grimm, Perkins, and Coates were "trying to break Plaintiff's legs."  Trimble then knelt in front of Plaintiff, "covering his mouth and nose" and obstructing his breathing.  Young, Hartley, and Gerenscer took turns trying to bend Plaintiff's "arms and wrists intentionally to break them"; Trimble also tried to "purposely" break Plaintiff's arm. Eventually, Gerenscer, Young, Trimble, and Hartley dragged Plaintiff into the cell on his stomach.  White, Grimm, Perkins, and Coates failed to intervene at various times during the use of force.

After the incident, Plaintiff saw a nurse and complained that his neck, arms, and legs hurt.  Later, Plaintiff told White and Coates that his neck hurt and he needed to see the nurse but they denied the request.  On May 20, 2024, Plaintiff put in a "sick-call," stating that "my neck hurts extremely bad, my arms and both wrists hurt and have knots and bruises on them."  Days later, Plaintiff was seen by a doctor and prescribed ibuprofen.  Plaintiff put in another "sick-call" on June 3, 2024, stating his neck was still sore.  The doctor ordered a shot of "Solumedrol 125mg," which a

nurse administered on June 6 or 7. On June 12, 2024, the doctor ordered an x-ray of Plaintiff's neck.

Based on the foregoing, Plaintiff alleges: (1) Eighth Amendment excessive force claims against Hartley, Young, Trimble, Gerenscer, Grimm, Perkins, and Coates; (2) state law battery claims against Hartley, Young, Trimble, and Gerenscer; and (3) Eighth Amendment failure to intervene claims against White, Grimm, Perkins, and Coates. Plaintiff also alleges a variety of other claims, which will be discussed below. As relief, Plaintiff seeks damages and "to be moved to a safer location."

## II.    Legal Standard

Because Plaintiff is a prisoner seeking relief from government employees, the Court must dismiss his complaint, or any portion thereof, if it determines it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b). To state a claim, Plaintiff must plead factual content which allows the Court to draw the reasonable inference the Defendants are liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must liberally construe Plaintiff's *pro se* allegations, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), but conclusory allegations and legal conclusions couched as factual

allegations are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III.    Discussion

Plaintiff attempts to manufacture a variety of constitutional and statutory claims from what are straightforward excessive force, failure to intervene, and battery claims against the Defendants physically present in E-Dorm on May 17, 2024. As will be explained below, these superfluous claims are either duplicative of the excessive force and failure to intervene claims, or not viable based on the factual allegations in the complaint.

### A.    Supervisory Liability

Plaintiff seeks to impose supervisory liability on Warden Quinn and Secretary Dixon for their failure to prevent White, Hartley, Grimm, Trimble, Gerenscer, Perkins, Coates, and Young's alleged misconduct. However, "[s]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history

of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).

Plaintiff has not alleged any facts indicating Secretary Dixon could be held liable for the events on May 17. Plaintiff suggests Dixon "isn't enforcing discipline against staff here at" SRCI and he contributed to "this policy violation because it's not in the use of force rules and regulations of the FDOC." Doc. 1 at 10-11. However, these allegations: (1) are conclusory and not entitled to the presumption of truth; (2) fail to show Dixon had knowledge of any prior constitutional violations; and (3) fail to establish any causal connection between Dixon's actions and the actions of the officers at SRCI.

Likewise, Plaintiff has not alleged facts suggesting Warden Quinn could held liable as a supervisor. Plaintiff asserts he submitted a grievance to Quinn indicating he "needed protection from all staff" at SRCI; Quinn returned the grievance without processing and advised Plaintiff that he did not have the right to seek protection against staff.[1] Doc. 1 at 8. However, Plaintiff does not allege when he filed the

---

[1] To the extent Plaintiff is attempting to bring a claim based on how Quinn responded to his grievance, that claim fails as "an inmate has no constitutionally-protected liberty interest in access

grievance or specify what misconduct the grievance described.[2]  Moreover, a single unsubstantiated grievance is not sufficient to establish the widespread abuse necessary to notify a supervisory official of the need to take corrective action.[3]  *See Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (holding allegations "that the defendants were on notice because they were aware of his administrative grievances and state court litigation" were insufficient to support supervisory liability); *Braddy v. Fla. Dep't of Labor and Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998) ("A few isolated instances of harassment will not suffice" to establish the notice necessary for supervisory liability.).  Based on the foregoing, Plaintiff cannot state any claim against either Secretary Dixon or Warden Quinn.[4]  *See Braddy*, 133 F.3d at 802 ("The standard by which a supervisor is held liable in [their] individual capacity for the actions of a subordinate is extremely rigorous.").  If Plaintiff chooses to file an amended complaint, he should omit Quinn and Dixon as Defendants.

---

to [a grievance] procedure."  *Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (citations omitted).

[2] To the extent Plaintiff suggests the allegations in his prior § 1983 action, N.D. Fla. Case No. 3:20cv5462-MCR-HTC, provided the required notice, the Court notes that case involved an incident which occurred in September 2019—over four years before this incident.  Moreover, that case ended in a settlement and, thus, there was no determination any correctional officers violated Plaintiff's rights.

[3] For essentially the same reasons, Plaintiff has not stated a failure to protect claim against Warden Quinn.  *See Nelson v. Tompkins*, 89 F.4th 1289, 1296 (11th Cir. 2024) (noting to establish a failure to protect claim, plaintiff must show he faced "a strong likelihood, rather than a mere possibility" of injury).

[4] This includes Plaintiff's Eighth Amendment, due process, equal protection, and "failure to maintain control of normal operations" claims against Dixon and Quinn.

**B.    Due Process**

Plaintiff claims Trimble violated his Fourteenth Amendment due process rights by covering his nose and mouth and obstructing his ability to breathe and call for help.    However, this factual allegation is properly understood as being encompassed within Plaintiff's Eighth Amendment excessive force claim against Trimble.    The allegation does not support a separate and distinct due process claim. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (When a constitutional amendment "provides an explicit textual source of constitutional protection," that amendment guides the analysis, "not the more generalized notion of 'substantive due process[.]'"); *cf. Burlinson v. Francis*, 2020 WL 5038793, at *4 (N.D. Fla. July 21, 2020), *report and recommendation adopted*, 2020 WL 5026546 (N.D. Fla. Aug. 24, 2020) ("[A] freestanding Fourteenth Amendment claim adds nothing to Plaintiff's Eighth Amendment claim of deliberate indifference and dismissing the Fourteenth Amendment claim does not detract from the surviving claim.").

Plaintiff also alleges Young, the FDOC, and Secretary Dixon violated his due process rights because "under no circumstances can a restrained inmate have a knee put on their neck during a use of force." Doc. 1 at 10.    As an initial matter, no provision of the Constitution categorically prohibits a correctional officer from placing their knee on the neck of an inmate.    Instead, whether Young used excessive force will be evaluated under the Eighth Amendment, which considers several

factors, including, among other things, the relationship between the need for force and the amount of force used.[5]  *See Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999).

In addition, Plaintiff asserts Young violated FDOC and law enforcement policy when he put his knee on Plaintiff's neck.  However, even if Young's conduct violated certain policies or regulations, a failure to follow such policies or regulations does not by itself establish a constitutional violation.  *See Sandin v. Conner*, 515 U.S. 472, 481-82 (1995) (noting prison regulations are "primarily designed to guide correctional officials in the administration of a prison," not "to confer rights on inmates"); *Caruth v. Pinkney*, 683 F.2d 1044, 1052 (7th Cir. 1982) ("By itself, however, the failure to comply with the [prison] regulation does not amount to a violation of constitutional magnitude.").  Thus, Plaintiff should omit the due process claims from his amended complaint.

## C.    Equal Protection

Plaintiff also claims Young, the FDOC, and Secretary Dixon are liable for violations of the Equal Protection Clause based on Young putting his knee on Plaintiff's neck.  However, "[t]o establish an equal protection claim, a prisoner must demonstrate that (1) 'he is similarly situated with prisoners who received' more

---

[5] Likewise, Plaintiff cannot state a claim against the Defendants present in E-Dorm for "failing to maintain control of normal operations," Doc. 1 at 17, as such a claim is duplicative to his Eighth Amendment claims against these Defendants.

favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001) (quoting *Damiano v. Fla. Parole & Prod. Comm'n*, 785 F.2d 929, 932–33 (11th Cir. 1986)).  Here, Plaintiff has not alleged facts indicating his treatment was due to discrimination based on a constitutionally protected characteristic.  Plaintiff, therefore, should omit references to equal protection from the amended complaint.

### D.    Failure to Protect

Plaintiff tries to bring failure to protect claims against White, Grimm, and Hartley based on the statements he made to these Defendants about fearing staff and not wanting to move to the Main Unit.  Doc. 1 at 8, 14, 16.  However, Plaintiff's statements are too vague to satisfy the deliberate indifference standard applicable to failure to protect claims.  *See Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (To prevail on an Eighth Amendment failure to protect claim, a plaintiff must show: (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.) (citation omitted).  Specifically, expressing a general fear of staff is not sufficient to make a defendant aware that a prisoner faces a substantial risk of harm.  In addition, these failure to protect claims are not separate and distinct from the excessive force and failure to intervene claims Plaintiff is also bringing against White, Grimm, and Hartley.  In other words,

Plaintiff cannot pursue a separate Eighth Amendment claim based on an allegation that a Defendant failed to protect him from that same Defendant's later use of force.

###    E.    Failure to Train

Plaintiff alleges Captain White failed to train Hartley, Young, Trimble, and Gerenscer "how to escort Plaintiff properly" and Hartley "not to hit Plaintiff with the walkie-talkie." Doc. 1 at 10. However, while Plaintiff suggests the basis for these claims is that White "was the senior official captain present," *id.*, he does not allege facts showing White had any role in training these officers or that White knew that failing to train the officers would result in the use of excessive force. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train.") (citation omitted); *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1052 (11th Cir. 2014) ("[A] plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had 'actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights,' and that armed with that knowledge the supervisor chose to retain that training program.") (quoting *Connick*, 563 U.S. at 61). Thus, the "failure to train" claims against White should be omitted from any amended complaint.

### F.     Deliberate Indifference to a Serious Medical Need

Plaintiff claims Defendants Coates and White showed deliberate indifference to a serious medical need after Plaintiff told them that his neck hurt and Defendants would not allow him to see the nurse.  Doc. 1 at 12, 17.  To establish liability for a deliberate indifference claim, a plaintiff must show: (1) an objectively serious deprivation; and (2) that the defendant actually knew his conduct put the plaintiff at substantial risk of serious harm.  *Wade v. McDade*, — F.4th —, 2024 WL 3354963, at *1 (11th Cir. July 10, 2024) (citing *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)).

Plaintiff has not alleged facts indicating Coates and White knew that refusing to immediately send him to the nurse put him at substantial risk of serious harm. Plaintiff simply told Coates and White that his neck hurt and he wanted additional treatment; he does not allege he had an observable injury or any other facts suggesting Coates and White knew that refusing to immediately refer him for treatment put him at substantial risk of serious harm.  Furthermore, Plaintiff indicates he saw a nurse before speaking with Coates and White.  If a nurse concluded Plaintiff's condition following the use of force did not warrant immediate treatment, it would be reasonable for Coates and White to rely on that clinical determination. *See Lynch v. Jackson*, 478 F. App'x 613, 619 (11th Cir. 2012) ("Prison officials who rely on medical personnel for the clinical determinations lack the requisite knowledge for deliberate indifference, absent evidence that clinical determination

[was] unreliable.") (citation omitted). Plaintiff, therefore, has failed to state a deliberate indifference to a serious medical need claim against Coates and White.

### G.    "George Floyd Act"

Plaintiff also alleges some of the Defendants violated the "George Floyd Act," Doc. 1 at 14, 16, which the Court assumes is a reference to the George Floyd Justice in Policing Act. *See* George Floyd Justice in Policing Act of 2021, H.R. 1280, 117th Cong. § 363 (2021). However, while this bill was proposed in Congress, it was never enacted into law and thus is not a source of any rights. Consequently, Plaintiff should omit any references to the "George Floyd Act" in his amended complaint.

### H.    Conspiracy

Plaintiff alleges White, Grimm, and Hartley are liable for conspiracy because they transferred him to the Main Unit after he said he feared staff. Doc. 1 at 8, 11. However, Plaintiff's conspiracy claim is vague, conclusory, and lacks any factual support. He does not describe any communications between these Defendants which indicate they formed an agreement to violate his rights. *See Collins v. Bates*, 2018 WL 5090845, at *7 (11th Cir. 2018) (finding the plaintiff's "vague and conclusory allegation that all of the defendants conspired against him was insufficient to establish the existence of a conspiracy for purposes of establishing a §§ 1983, 1985, or 1986 violation"); *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d

1112, 1122 (11th Cir. 1992) ("[T]he linchpin for conspiracy is agreement, which presupposes communication.").

Furthermore, a claim that White, Grimm, and Hartley conspired to transfer him to the Main Unit[6] would be barred by the intracorporate conspiracy doctrine, which holds that employees of the same entity cannot be held liable for conspiracy. *See McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) ("[U]nder the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves."); *Claudio v. Crews*, 2014 WL 1758106, at *6 (N.D. Fla. May 1, 2014) ("The doctrine applies to public entities such as state agencies and [their] personnel.").

Here, all the Defendants Plaintiff identifies as being involved in a conspiracy are FDOC employees. No outsiders are involved. The subject of their alleged conspiracy—transferring an inmate between parts of a prison—involves job-related functions within Defendants' scope of employment as correctional officers. *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010) (recognizing "that one might reasonably believe that violating someone's constitutional rights is never a job-related function" but noting "[t]he scope-of-employment inquiry is whether the employee … was performing a function that, but for the alleged

---

[6] A prisoner has no right to be housed in any particular part of a prison.

constitutional infirmity, was within the ambit of the [employee's] scope of authority (i.e., job-related duties) and in furtherance of the employer's business"). Therefore, Plaintiff cannot state a conspiracy claim against White, Grimm, and Hartley.

## I.    FDOC Immunity

Plaintiff names the FDOC as a Defendant, but the FDOC is an entity of the State of Florida, and thus, immune from suit for money damages under the Eleventh Amendment. *See Siskos v. Sec'y, Dep't of Corr.*, 817 F. App'x 760, 766 (11th Cir. 2020) (noting the FDOC is an entity of the State of Florida and immune from suit for money damages under the Eleventh Amendment). Accordingly, Plaintiff cannot sue the FDOC.

## J.    Injunctive Relief

As relief, Plaintiff seeks "to be moved to a safer location." Doc. 1 at 21. However, "courts generally will not interfere in matters of prison administration, including an inmate's custody status or location of confinement." *Logan v. Spreadly*, 2020 WL 1640085, at *2 (M.D. Fla. Apr. 2, 2020) (citing *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979) ("[T]he operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches … not the Judicial.")). Furthermore, Plaintiff has not alleged facts suggesting he faces an imminent threat of the same type of incident occurring in the future. *See Thomas v. Bryant*, 614 F.3d 1288, 1318 (11th Cir. 2010) (noting "the irreparable-injury

requirement [for injunctive relief] cannot be met absent a real or immediate threat that the plaintiff will be wronged again") (citation omitted). Thus, Plaintiff's complaint does not support a request for injunctive relief.

## IV.    Conclusion

To the extent Plaintiff wishes to pursue his claims, he must file an **amended complaint** on this Court's required form and consistent with this Order. The complaint must also be limited to 25 pages. Also, Plaintiff must place each defendant's name in the style of the case on the first page of the complaint form and include their address and employment position in the "Parties" section of the form. In the statement of facts, Plaintiff should clearly describe how each named defendant is involved in each alleged violation of law, alleging the claims as to each defendant in separately numbered paragraphs and including the specific dates and times of the alleged unlawful acts.

If Plaintiff cannot state exactly how a particular defendant harmed him, he should omit that person as a defendant from his amended complaint. In the section titled "Statement of Claims," Plaintiff must state what rights under the Constitution or laws of the United States have been violated, and he must provide support in the statement of facts for the claimed violations. The amended complaint must contain all of Plaintiff's allegations. *See* N.D. Fla. Loc. R. 15.1. Plaintiff is reminded his

amended complaint, like his prior complaint, will be executed under penalty of perjury.

Accordingly, it is ORDERED:

1. The clerk shall send Plaintiff a civil rights complaint form for use by prisoners in actions under 42 U.S.C. § 1983. This case number and "Amended Complaint" should be written on the form.

2. Within **twenty-one (21) days** from the date of this Order, Plaintiff shall file either a notice of voluntary dismissal or an amended complaint. If Plaintiff files an amended complaint, it must be <u>typed or clearly written</u> and submitted on the Court form as instructed above. The amended complaint must not exceed 25 pages. *See* N.D. Fla. Loc. R. 5.7(B) (A "complaint, together with any memorandum, must not exceed 25 pages, unless the Court authorizes it.").

3. Plaintiff shall notify the Court of any changes to his address within seven (7) days of the change by filing a notice of change of address.

4. Plaintiff's failure to comply with this Order may result in a recommendation that this case be dismissed.

DONE AND ORDERED this 1st day of August, 2024.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**